JOHN K. HOLLOWAY, appellant,

*v.*

ADRAIN S. APPELGET, respondent.

1. An owner of municipal bonds agreed to pay an attorney a percentage for collecting them. The bonds were to be left in the hands of the owner until needed by the attorney. The bankruptcy of the city rendered it impossible to collect the bonds for several years. The owner, without the knowledge of the attorney, and for the purpose of evading the payment of the percentage, sold the bonds and concealed that fact from the attorney.

2. When the attorney long afterwards discovered that the bonds had been sold, he sued the owner for breach of his contract, to which action the owner pleaded the statute of limitations.—*Held*, that he will be enjoined in equity from using the statute as a defence.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion :

This bill is filed to restrain the defendant from setting up the statute of limitations in an action at law brought by the complainant against the defendant and now pending in the Mercer

circuit.   On March 5th, 1884, the defendant was the owner of four bonds of the city of Rahway.   On that date he consulted Mr. A. S. Appelget, an attorney-at-law, concerning the collection of the said bonds.   The result of the consultation was that they entered into a contract in the following terms:

" In consideration of the services and expenditures to be rendered by A. S. Appelget, attorney-at-law, in collecting amounts due me on bonds of the city of Rahway, I hereby agree to allow him, as compensation therefor, ten per .cent. of the net amount he may be paid thereon, hereby requiring him not to settle for a less sum than the face value of said bonds and interest, without my consent, he to save me from all costs of suit.

" Dated March 5th, 1884.                (Signed)
                                    "John K. Holloway,
                                    "A. S. Appelget."

One of the bonds was then due, and upon one of the other three there were coupons due.   The four bonds were by Mr. Appelget, he having no safe, deposited in the Hightstown Bank. Afterwards Mr. Holloway obtained an order from Mr. Appelget, by which he got the bonds from the bank.   Mr. Appelget says that Mr. Holloway promised to return them, for the purpose of bringing suit, when the principal upon them became due. Mr. Appelget brought suit on the bond that was due, and, in June, 1884, recovered judgment.

On June 18th, 1884, Mr. Appelget wrote to Holloway the following letter :

" Dear Sir—I have entered up judgment for you against the city of Rahway, for $2,832.34, and you will be entitled to interest on this sum from June 16th, 1884, until it is paid.   A law was passed March 25th, 1884, and made to take effect immediately, requiring all persons holding claims against Rahway, to file with the city clerk a dissent to receive the sum they offer by compromise within three months, and it must be on a form or blank prepared by their city clerk.   A most scoundrelly and outrageous law, but you will have to look out for it and file the dissent before June 25th instant, or they may get the best of you on the sly.

" Respectfully yours,
                                    "A. S. Appelget."

Upon the receipt of this letter, Mr. Holloway, instead of visiting Mr. Appelget, secured the services of another attorney

to file the dissent.   There appears to have been no other communication between the complainant and the defendant for several years, during which time the financial affairs of the city of Rahway were in a bankrupt condition.

On December 31st, 1885, Mr. Holloway sold the four bonds to N. B. Conklin for the sum of $1,500.   Mr. Holloway says that he was induced to open communication with Mr. Conklin through an advertisement which he saw in a local newspaper, in which advertisement Conklin offered to purchase Rahway bonds. The bonds so purchased by Conklin were turned into the city of Rahway and paid.   Mr. Appelget first discovered that the bonds had been paid, when, in 1894, the attorney of the city of Rahway requested him to have the judgment which he had obtained against the city, for Mr. Holloway, satisfied upon the record.   Afterwards Appelget brought his action against Holloway.

The question is whether, in equity, Mr. Holloway is entitled to invoke the statute of limitations in bar of Appelget's action at law.   In most of the cases the bar has been set up in suits in equity instituted for the purposes of obtaining relief in instances of fraud.   There, however, is no reason why a court of equity should not, by the use of its injunctive power, disarm a defendant from using the statute fraudulently in an action at law.   In the case of *Freeholders of Somerset* v. *Veghte, 15 Vr. 509,* where it was held that a fraudulent concealment of a cause of action was no answer to the statute in an action at law, it was admitted that relief could be successfully sought in equity.

It also appears that the equitable relief here invoked has been granted mostly in cases where the act out of which the cause of action arose was a fraudulent act, in its nature self-concealing, such as embezzlements or thefts carried out by the falsification of accounts or vouchers.   But it seems clear that a court of equity will interfere, although the cause of action may not have arisen out of a technically fraudulent act, if the defendant has employed any means to mislead the plaintiff, or to hide from him the fact that a cause of action has arisen.

Now, the facts displayed in this case are such that I do not see how the defendant could honestly have taken the course he did. He could not have forgotten, when he sold the bonds, that he had entered into a written contract with Mr. Appelget to pay him ten per cent. of the amount collected. He had been informed, by the letter already set out, that Mr. Appelget had entered up a judgment for a portion of the amount represented by the four bonds. Upon receipt of that letter, instead of going to Mr. Appelget and consulting him, he employed another attorney to file his dissent to the proposition of the city of Rahway. He never thereafter visited Appelget, but instead opened a correspondence with a broker, which resulted in the sale of the bonds unknown to Appelget. The whole affair has the unmistakable appearance of an attempt to deprive Mr. Appelget of his percentage by dealing with a broker, on Holloway's own account, surreptitiously. It is within the range of possibility that Holloway may have believed that Mr. Appelget had abandoned all hope of collecting the money, but in the face of Appelget's letter informing him of the entry of the judgment, and the passage of the statute affecting his claim, I do not see how he could have formed such an opinion.

Nor do I see in what way Mr. Appelget was in laches in failing to discover that the bonds had been sold. During all the time intervening between the date of the contract between him and the defendant and the date of the sale of the bonds, the desperate financial condition of Rahway was notorious. There was at the time no prospect of realizing any substantial part of the debt, and it was natural that Appelget should wait, hoping for a change in the condition of affairs.

Nor was the sale of the bonds discoverable except by accident. No inquiry about their custody was called for until a time should arrive when further litigation would be advisable. There was no act required by Mr. Appelget in the exercise of due diligence, which, if performed, would have led to a discovery of the sale, which he left unperformed.

I will advise a decree that the injunction be made perpetual.

Read v. Bennett.

Per Curiam.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—The Chief-Justice, Depue, Garrison, Gummere, Lippincott, Van Syckel, Dayton, Hendrickson, Nixon—9.

*For reversal*—Collins, Dixon, Ludlow, Bogert—4.