Complainants, husband and wife, have brought an action at law against defendants to recover damages for physical injuries alleged to have been sustained by Mrs. Howard through the negligent operation of defendants' railway. By the present suit in this court complainants seek an injunction to restrain defendants from interposing a defense of the statute of limitations in the law court. The relief sought is based upon the claim that the failure of complainants to sue for damages within the statutory period of two years was caused by the conduct of defendants.
The testimony submitted at final hearing in this court cannot be said to be in material conflict or the facts in doubt except as to a certain telephone conversation which occurred on February 9th or 10th, 1927 — one or two days before the statutory period for suit expired. The facts antedating that telephone conversation are substantially as follows: The casualty occurred February 11th, 1925. One MacDonald, as claims investigator of the defendants, called at the home of complainants within a day or two thereafter and interviewed Dr. Howard, husband of complainant Mrs. Howard, touching the condition of his wife, and continued making like calls on Dr. Howard from time to time — latterly at times using the telephone instead of making personal calls — for a period extending to October, 1926. During all of that time the uniform attitude of Mr. MacDonald was that of sympathetic concern touching Mrs. Howard's injuries and sufferings, and during all of that period both Mr. MacDonald and Dr. Howard appear to have assumed and to have given mutual expression to the view that an amicable settlement could be made when the extent of Mrs. Howard's injuries could be definitely ascertained, and that it would be unnecessary for complainants to employ an attorney, but that any consideration of the amount to be paid by defendants could not be intelligently had until *Page 519 
it could be ascertained with greater certainty whether Mrs. Howard's injuries were permanent.
In October, 1926, Dr. Howard and Mr. MacDonald determined that Mrs. Howard's condition was sufficiently defined to justify a consideration of the terms of settlement, and Mr. Turnbull, as the superior officer of defendants' district claims department, was notified to that effect; accordingly, Mr. Turnbull called on Dr. Howard for the purpose named, October 13th, 1926. At that interview Mr. Turnbull asked Dr. Howard to state the amount that would be accepted in settlement and Dr. Howard named $10,000. No reply was made by Mr. Turnbull touching the reasonableness of that amount; he then inquired whether he might interview the six physicians who had treated Mrs. Howard and received Dr. Howard's permission to do so. It was then arranged that Mr. Turnbull would see the several physicians, or cause them to be interviewed, and take up the matter with defendants and apprise Dr. Howard of the result. From that date until February 9th or 10th, 1927, Dr. Howard confidently awaited a reply from Mr. Turnbull touching the amount defendants would pay. On February 9th or 10th, 1927 — Mr. Turnbull says positively February 9th; Dr. Howard thinks it may have been February 10th — Mr. Turnbull called Dr. Howard on the telephone and stated to him that defendants would pay in settlement $2,500, but would not pay more. The statutory period for suits on claims of that nature is two years and in consequence expired February 11th, 1927. At the time of that telephone conversation Mr. Turnbull admittedly knew that the two years' limitation would expire February 11th, since he had shortly theretofore discussed that fact with the solicitor of defendants. Dr. Howard did not know of the two years' period of limitation.
The only dispute touching the substance of the telephone conversation of February 9th or 10th is that Mr. Turnbull says that he named $2,500 as an ultimatum and that Dr. Howard definitely and finally refused to accept that amount and stated that he would "take other means;" Dr. Howard says that his reply was that he did not think Mrs. Howard *Page 520 
would accept that amount, but that he would submit the offer to her and apprise Mr. Turnbull of her determination.
There can be no doubt from the evidence that Dr. Howard fully understood during the entire statutory period that the liability of defendants for damages would not be contested, nor can it be doubted that his belief in that respect was caused by the attitude of the representatives of defendants and that his failure to employ an attorney prior to the expiration of the statutory period was due to that belief. It is also reasonably clear that both of the representatives of defendants already referred to knew or had reason to believe that Dr. Howard had no attorney. It is also certain that Dr. Howard did not know of any limited period within which suit should be brought until after the expiration of that period. The evidence also establishes that during the period between the casualty and October, 1926, Dr. Howard and Mr. MacDonald concurred in the view that the amount of damages could not be adequately considered until Mrs. Howard's condition should become more clearly defined, and that from October 13th, 1926, until February 9th or 10th, 1927, Dr. Howard's inactivity was the result of the engagement of Mr. Turnbull to apprise him of what amount defendants would pay.
Subsequent to the expiration of the statutory period Dr. Howard apprised Mr. Turnbull that the offer of $2,500 in settlement was accepted, but was informed that he was too late.
I am convinced that in the circumstances of this case defendants cannot be privileged to interpose the statute of limitations as a defense to complainants' pending action at law for damages.
It seems clear that if defendants' wrongful conduct can be said to have caused complainants to subject their claim to the bar of the statute of limitations, a court of equity should not permit them to hold the advantage thus obtained.
It must be recognized that the statute of limitations is for the benefit of individuals and not to secure general objects of policy; hence, it may be waived by express contract or by necessary implication, or its benefits may be lost by conduct invoking the established principles of estoppel in pais. *Page 521 Freeman v. Conover 95 N.J. Law 89. Also, it should be noted that while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect; fraud, in the sense of a court of equity, properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. 1 Story Eq. Jur.
§ 187. The authorities in this state to the general effect stated are Lamb v. Martin, 43 N.J. Eq. 34, 37; Martin v.State Insurance Co., 44 N.J. Law 485, 487; Holloway v.Appelget, 55 N.J. Eq. 583, 585; Clark v. Augustine, 62 N.J. Eq. 689,695; Freeman v. Conover, 95 N.J. Law 89, 93. See, also, Magner v. Mutual Life Association, 44 N.Y. Supp. 862;affirmed, 162 N.Y. 657; Thompson v. The Phoenix Insurance Co.,136 U.S. 287, 300.
In the present case it seems clear that from the date of the casualty (February 11th, 1925) until October, 1926, the attitude of defendants' representative was not only calculated to induce Dr. Howard, as representative of his wife, to believe, but did in fact induce him to believe, that no question was to be raised touching defendants' responsibility for the casualty, and that the amount to be paid as damages could best be determined by awaiting the course of Mrs. Howard's recovery, and that, in consequence, no necessity existed for her to employ an attorney; and it is equally clear that from October, 1926, until either two days or one day before the expiration of the statutory period for suit, Dr. Howard, in the same trustful attitude as theretofore, awaited the promised report of Mr. Turnbull as to what amount defendants would pay; and during all of the two years' period Dr. Howard was unquestionably ignorant of the existence of the *Page 522 
statute of limitations. During the period from October 13th, 1926, to February 9th or 10th, 1927, the inactivity of complainants may be said to have been wholly occasioned by Mr. Turnbull in his failure to apprise Dr. Howard pursuant to Mr. Turnbull's engagement, of the amount defendants would pay.
If, in these circumstances, the telephone conversation of February 9th or 10th was, as narrated by Dr. Howard, to the effect that Dr. Howard was to submit the offer of Mr. Turnbull to his wife and subsequently apprise Mr. Turnbull of his determination — Mr. Turnbull admittedly knowing that the statutory bar would arise February 11th, and either knowing or having what appears to have been good reason to believe that Dr. Howard was probably ignorant of that fact — it seems impossible to escape the conclusion that in the circumstances Mr. Turnbull owed to Dr. Howard a duty in connection with that offer to apprise him of the fact that the offer could only be considered open at most two days because of the existence of the statute, since a reply from Dr. Howard within the two days could not have been reasonably anticipated by Mr. Turnbull without some suggestion of that nature; the natural and reasonably anticipated effect of such an offer at that late time, without the suggestion of limitation of time for the proposed reply, was to cause Dr. Howard to subject his claim to the bar of the statute.
But even assuming the telephone conversation to have been as narrated by Mr. Turnbull, I am impressed that in the circumstances already narrated it was unreasonable, unjust, unfair and unconscientious for Mr. Turnbull to delay his promised report from the preceding October until at most two days before the expiration of the statutory period, knowing that Dr. Howard had been awaiting a reply from him during all that time, and then precipitously declare his offer an ultimatum, without at least apprising Dr. Howard of the fact, then admittedly in Mr. Turnbull's mind, that only two days remained for suit. The effect of his conduct was to subject complainants' claim to the bar of the statute, and that effect, in the circumstances stated, appears to have been the natural *Page 523 
and probable effect reasonably within the contemplation of Mr. Turnbull.
While it cannot be said to be ordinarily any part of duty to apprise an adversary of his rights, it must be recognized that one cannot justly or equitably lull his adversary into a false sense of security and thereby cause his adversary to subject his claim to the bar of the statute and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought. This is recognized by our federal supreme court as a rule of justice in the concluding sentence of the opinion of the court in Thompson v. The Phoenix InsuranceCo., supra, and is made the basis of decision in Magner v.Mutual Life Association, supra.
Any suggestion of want of authority of Mr. MacDonald and Mr. Turnbull to bind defendants by their conduct is untenable. Admittedly both were acting within the field of their employment. Defendants cannot avail themselves of the fruits of their activities and at the same time escape responsibility for the methods employed by them.
An injunction will be advised pursuant to the prayer of the bill. *Page 524