## BERGERON v. MANSOUR.
### No. 4053.

Circuit Court of Appeals, First Circuit.
Nov. 23, 1945.

28

William A. Gunning, of Providence, R. I., for appellant.

William G. Todd, of Boston, Mass., and William S. Flynn, of Providence, R. I., for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

On October 21, 1943, the plaintiff filed her complaint in the court below seeking to recover damages for personal injuries sustained by her when the automobile in which she was riding as a guest and the automobile owned and operated by the defendant collided on the Boston Post Road in the Town of South Attleboro, Mass., on June 20, 1940. In reply to the plea of the statute of limitations as a bar to the action, the plaintiff alleged that the conduct of the defendant, through his agents and servants, constituted an estoppel which prevented him from interposing such a defense. At the close of the evidence the defendant moved for a directed verdict and the court denied the motion. The jury returned a verdict for the plaintiff and judgment was entered in the sum of $27,500. A motion to set aside the verdict and judgment and enter judgment for defendant was denied and the motion for a new trial was also denied if the plaintiff filed a remittitur in the sum of $7,500. The plaintiff filed such remittitur and judgment was entered for her in the sum of $20,000, and the defendant has appealed.

It has been stipulated that there is no question of liability or damages in this court. Under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the substantive law governing this case is the law of Massachusetts. State statutes of limitations, whether regarded as having "procedural" or "substantive" effect, are binding on the federal courts, sitting in equity or at law, where the rights pursued in the federal courts are granted by the state. Guaranty Trust Co. of New York v. York, 325

U.S. ——, 65 S.Ct. 1464. There is a one year statute of limitations in Massachusetts on actions arising out of motor vehicle accidents.[1] The plaintiff's father, Mansour S. Mansour, testified that on the day after the accident, June 21st, Russell J. Wright, an adjuster for an insurance company, called upon him at his place of employment; told him that he represented the Maryland Casualty Insurance Company, which insured the car involved in the collision, and talked about the "terrible accident" to his daughter. They discussed the accident and the condition of the plaintiff. He said the adjuster told him: "I want you to see your daughter and tell her that the Maryland Casualty Company is a very good company and willing to pay all her damages and don't let her hire a lawyer at all. She don't need no lawyer at all in that case." Mr. Mansour also testified that Wright told him: "When your daughter gets well everything will be settled promptly * * * we will pay that bill ourselves." Mansour stated that he was told to take the matter up with his daughter "and see what she says". The father did this on the following Sunday when the plaintiff had regained consciousness. He told her that the adjuster had said: "You don't need no lawyer in that case at all because the company is a reliable company and they will pay all the damages and suffering." Her father said she replied: "If you think it is all right, it is all right with me." On Saturday a week later, after he had received the weekly bill from the hospital, he went to the adjuster's office and said: "I got a bill from the hospital; what am I going to do with it? Will I have to pay it now or wait or what will I do with it?" The adjuster told him: "Those bills will come along every week as long as your daughter is in the hospital. When the final bill comes give it to me and we will take care of it." He said the adjuster asked him "if I saw my daughter and speak to her about what he promised and I said, 'Yes, I did' and he said 'What did she say?' I said: 'Well, she agreed not to see a lawyer and not to bring a suit at all as long as he promised.' He said: 'That is very good; that is fine; you keep that up'."

Again, the father, on September 2, 1940, after he had received the final bill from the hospital and his daughter had returned home, went to the adjuster's office and gave him the final bill. Wright asked him: "How is your daughter now?" and he told him: "She is not able to move at all. She will have to use the crutches for a long time; I don't know how long." He then asked the adjuster: "When do you think we are going to settle the accident. You promised we were going to settle the accident without any lawyers" and the adjuster said: "Your daughter is not well yet?" Mansour replied: "Of course not because she will be on crutches for a long time. I don't know how long she is going to be in that condition." And then Wright said: "As long as your daughter is that way, we cannot talk about settlement at all, until your daughter gets well * * *. We don't know what the damage is now."

The adjuster asked him if he had seen a lawyer about the case and he replied that he had not. Mansour said that the adjuster again promised "that if we did not see a lawyer, the company would settle that accident with us without an outsider" and also stated: "Don't give the benefit to the lawyers. We will get together on it" and that the insurance company would take care of the bill.

At this conference the adjuster arranged with the father for an examination of the plaintiff which was made later by a doctor for the insurance company.

The plaintiff herself testified that her father told her that he had talked with Mr. Wright, an adjuster for the Maryland Casualty Company; that the adjuster had come to see him in the shop, and had "told him that the Maryland Casualty Company was a very reliable concern—insurance company—since it insured my father's place also and that if we did not get a lawyer, that we would settle it between ourselves, when I was well; and I remember my father telling me not to get a lawyer, that everything would be all right with me; and he wanted me to agree with what Mr. Wright had said." The plaintiff testified that she told her father "that is fine" and agreed to abide by Wright's proposal.

She said that she absolutely relied upon the promise which she understood Mr. Wright, the adjuster, had made to her father to settle the case out of court and that she had not consulted a lawyer or instituted any proceedings.

In December, 1941, after she had ascertained that she would have to be admitted to the hospital for further treatment, and

---

[1] Mass.Gen.Laws (Ter.Ed.) Ch. 260, § 4.

that she could not be admitted unless the hospital bill was paid, she took the hospital and doctor's bills to the adjuster and told him that she "could not be admitted unless that hospital bill was paid, and * * * I was bringing him the bills, so that he would take care of it, that I would be admitted; and he told me that there was no—His exact words to me, as I recall them—'You are out of luck. It is too late now'." She asked him what he meant by her being too late and by her being out of luck. She said he replied: "It is too late", and that he kept saying: "You are too late" and "you are out of luck", and wouldn't listen to her. She said she asked him: "What do you mean it is too late? * * * You told my father that if we did not get a lawyer that all my damages and expenses would be paid." She said after that he wouldn't listen to her and he motioned with his hands, and said: "Oh, you are out of luck". She replied: "I guess I will have to have a lawyer" and he said: "You can get any lawyer you want, and he will tell you I am right." He said: "It is too late now. It is over a year." She asked: "What do you mean it is over a year?" He answered: "You can get any lawyer you want, and he will tell you the same thing."

Opposing this testimony was that of the adjuster who said he made no express agreement to waive the statute and no offer to settle the case in a definite sum.

 The plaintiff maintains that the representations and conduct of the defendant, through his agents and servants, were such as to estop him from obtaining the benefit of the statute. It seems to us that there is substantial evidence to warrant a verdict for the plaintiff. There can be no doubt that the adjuster held out to the plaintiff the idea and hope of a settlement of her claim, that her hospital and doctor's bills would be paid and that she would be compensated for her pain and suffering if she did not consult counsel. The plaintiff reasonably relied upon the representations and conduct of the defendant and allowed the statute to run before commencing her action. It is not necessary that the representations and conduct should be labelled as fraudulent in a strict legal sense or that they were made or carried on with an intention to mislead the plaintiff. All the circumstances of the case should be considered to determine whether the adjuster should be permitted to repudiate the consequences of his acts. We think it is un-conscionable to permit him to lull her into a false sense of security and cause her to let the one year limitation pass and then allow him to take advantage of the result of his conduct as a defense to her action. Howard v. West Jersey & S. S. R. Co., 102 N.J.Eq. 517, 141 A. 755. In Thompson v. Phenix Insurance Co., 136 U.S. 287, 299, 10 S.Ct. 1019, 1023, 34 L.Ed. 408, the Supreme Court in referring to Mickey v. Burlington Ins. Co., 35 Iowa 174, 180, 14 Am. Rep. 494, said that "it would be contrary to justice for the insurance company to hold out the hope of an amicable adjustment of a loss, and thus delay the action of the insured, and then be permitted to plead this very delay, caused by its course of conduct, as a defense to the action when brought." Morality and justice form the basis for equitable estoppel and neither consideration nor legal obligation are required to support it. Robinson v. Commissioner, 6 Cir., 100 F.2d 847, 849, certiorari denied 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476.

 Defendant argues that estoppel is predicated upon a promise sufficiently certain to understand readily what the promissor undertakes; that the promise must be expressed, and contain an offer of a specific sum of money. However, he overlooks the basic principles of estoppel. A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made. Calkins v. Wire Hardware Co., 267 Mass. 52, 165 N.E. 889. Nor is an express promise to waive the statute of limitations necessary to estop a party from pleading the statute as a defense. McLearn v. Hill, 276 Mass. 519, 177 N.E. 617, 77 A.L.R. 1039, approving Howard v. West Jersey & S. S. R. Co., supra. See also Hayes v. Gessner, 315 Mass. 366, 52 N.E.2d 968.

In the McLearn case there was no express promise to do any act but the court implied a promise from the conduct of the defendant, and defendant here, as in that case, represented to the plaintiff that no harm would befall her as a result of her delay in bringing suit.

The defendant relies on the case of Ford v. Rogovin, 289 Mass. 549, 194 N.E. 719, 720. In that case the defendant, immediately after the accident, told the witness, an attorney, who was riding with the plain-

tiff, that the plaintiff would not have to bring suit to recover his damages since his insurance company would settle the case. The court in sustaining a directed verdict for the defendant held that the evidence did not warrant a finding of facts which would bar the defendant from pleading the statute of limitations. It stressed that the conduct of the defendant was not such as to cause a reasonable man to rely thereon, that the defendant made no assurances in his own behalf but made assurances only in behalf of the insurance company, which he had no power or authority to bind. These statements were made to an attorney who had full knowledge of the lack of authority of the defendant. The court said that "the statements * * * contemplated a settlement within a reasonable time" and hence the plaintiff was justified in delaying only a reasonable time before commencing action and had ample opportunity to bring his action within the ten months that remained of the statutory period after the last representations of the defendant. In the case at bar, however, the representations were made by the agent of the insurance company who was fully authorized to hold out the promise of a settlement. Moreover, the adjuster here informed the plaintiff that no settlement could be made until she had fully recovered, since the damages would not be ascertainable until then. The plaintiff had good reason to believe that she could refrain from commencing action until she had fully recovered. She did not learn of the defendant's intention to plead the statute of limitations until December, 1941, at a time when she was not completely well. The record discloses that the reason for the interview with the adjuster in December, 1941, was the impending admission of the plaintiff to the hospital for further treatment. Up to this interview it was quite reasonable for the plaintiff to believe that a settlement would be made.

The defendant further contends that Wright had no actual, implied, or apparent authority to bind the insurance company to pay $27,500, the amount of damages awarded by the jury. The defendant here, however, confuses the principles of estoppel with the law of contracts. This action is not a contract action on a promise by the insurance company to pay $27,-500, which would require some authority, actual, implied or apparent. The plaintiff here is suing in an action of tort and seeks to prevent the defendant from pleading the statute of limitations as a bar to her action. The only authority which the agent need have to constitute his conduct an estoppel is the authority to promise a settlement. It is clear that all insurance adjusters have at least apparent authority to make promises of settlement. The principal function of insurance company adjusters is to determine the liability of the insured and to make arrangements for settling claims. We find that the defendant's contention that the trial court was in error in denying the motions for a directed verdict, judgment notwithstanding the verdict and a new trial, because the evidence was insufficient to raise the issue of an estoppel, is without merit.

It is urged that the plaintiff delayed an unreasonable time in commencing her action in the court below after learning of the defendant's intention to plead the statute of limitations and that consequently her action is now barred by laches. The contention is made, therefore, that the trial court erred in denying defendant's motions for a directed verdict, judgment notwithstanding the verdict and for a new trial. We find no error in these rulings.

This defense was never properly before the trial court. It was urged for the first time in the defendant's motion for leave to reargue his motions for judgment notwithstanding the verdict and for a new trial, which were filed in the court below after the defendant's appeal to this court had been perfected and when the District Court no longer had jurisdiction over the case. Federal Rules of Civil Procedure, Rule 59(b), 28 U.S.C.A. following section 723c. Midland Terminal Railway Co. v. Warinner, 8 Cir., 1923, 294 F. 185, 189; Z & F Assets Realization Corporation v. Hull, D.C., 31 F.Supp. 371, 374.

To assert the defense of laches one must plead that defense affirmatively in his answer. F.R.C.P. Rule 8(c); Dirk Ter Haar v. Seaboard Oil Co., D.C., 1 F.R.D. 598; Adamowicz v. Iwanicki, 286 Mass. 453, 190 N.E. 711.

The defendant neither pleaded nor brought in issue in the trial court the question of laches. He asserts, however, that the point has been properly raised for review on appeal. Notwithstanding his contentions to the contrary, we can find no evidence in the record or in the proceedings below of any assertion of this defense.

The record unquestionably discloses considerable delay by the plaintiff in commencing her action after learning of the defendant's intention to plead the statute of limitations. But there is nothing to show to what such delay was attributable. "If appellant desired to rely upon this ground, it should have presented and preserved in the record evidence justifying the conclusion that culpable delay was attributable to appellee." Vulcan Mfg. Co. v. Maytag Co., 8 Cir., 1934, 73 F.2d 136, 141, 142. The defendant had ample opportunity of which he did not see fit to avail himself, to amend his answer and include the defense of laches. F.R.C.P. Rule 15(a) (b) (d). The question of laches not having been presented in any form to the trial court can not now be raised for the first time on appeal. Jackson v. Denver Producing & Refining Co., 10 Cir., 1938, 96 F.2d 457; Ashton v. Glaze, 9 Cir., 1938, 95 F.2d 427, 429.

■ It is the general rule that courts of review will not consider questions which have not been raised and tried in the trial court. LeTulle v. Scofield, 1940, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355; Kortz v. Guardian Life Insurance Co., 10 Cir., 1944, 144 F.2d 676, 679, certiorari denied 323 U.S. 728, 65 S.Ct. 63.

■ Occasionally appellate courts have considered questions not raised in the trial court in order to prevent a miscarriage of justice. See Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; Sulzbacher v. Continental Casualty Co., 8 Cir., 88 F.2d 122, 124; Goodcell v. Graham, 9 Cir., 1929, 35 F.2d 587. However, this exception is confined to situations where evidence has been newly discovered or where counsel and the trial court has overlooked a governing case or a crucial statute. The defendant in the case at bar was completely aware of all the facts and neglected neither a crucial case nor a governing statute. The general rule preventing parties from raising new points on appeal is strictly adhered to where the question is merely one of pleading or fact and the record does not reveal evidence sufficient for a determination of the issue by the appellate court. Goldie v. Cox, 8 Cir., 1942, 130 F.2d 695, 715.

It is important that this rule be enforced for it requires litigants to deal fairly and frankly with each other and with the trial court and prevents the trial of cases piecemeal or in installments and tends to put an end to litigation. Helvering v. Rubinstein, 8 Cir., 1942, 124 F.2d 969, 972. Had the defendant interposed this defense seasonably, the plaintiff would have had an opportunity to explain her delay in instituting this action after learning of the defense of the statute of limitations. To allow a party to put forth new defenses on appeal would give him an incentive to postpone such defenses until after he has had his day in court. See New York Life Insurance Co. v. Calhoun, 8 Cir., 114 F.2d 526, 543, cert. den. 311 U.S. 701, 61 S.Ct. 141, 85 L.Ed. 455.

■ The defendant has shown no injury by virtue of this delay and injury resulting from delay is an essential element of the defense of laches. See Autocar Co. v. Commissioner, 3 Cir., 1936, 84 F.2d 772, 776.

■ The defendant asserts that his first defense to the effect that the plaintiff's complaint failed to set forth a cause of action upon which relief could be granted because of the bar of the statute embraces the defenses of laches. This defense is not a general defense of insufficiency since the defendant by his own qualification limited it. In addition, as it appears above, laches is an affirmative defense and must be so pleaded.

We find no reversible or prejudicial error in the rulings by the trial court on the admission of certain evidence and testimony to which the defendant excepted or in the denial by the trial court of the rulings requested by the defendant or in the granting of plaintiff's request to instruct the jury or in any portion of the trial judge's charge to the jury.

The judgment of the District Court is affirmed with costs to the appellee.

MAGRUDER, Circuit Judge (concurring).

Since federal jurisdiction of this complaint in tort was based on diversity of citizenship, the Massachusetts one year statute of limitations would necessarily be a bar to the action in the federal court if, under the circumstances disclosed, it would have been held to be a bar by the state courts of Massachusetts had the action been brought there. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464.

But the Massachusetts decisions cited in Judge MAHONEY'S opinion make it clear

that the plaintiff's evidence was sufficient to get to the jury and that, if the jury believed such evidence (as it did), then as a matter of Massachusetts law the defendant was precluded from relying upon the statute of limitations as a bar. The statute of limitations is unqualified in terms; but by judicial decision in Massachusetts it has become established law that the statute, which "is for the benefit of individuals and not to secure general objects of policy", may be "waived" by—or rendered unavailable to—a party whose course of conduct, reasonably relied on by the other party, has made it contrary to the general principles of fair dealing and good conscience to take advantage of the bar of the statute. McLearn v. Hill, 1931, 276 Mass. 519, 524, 525, 177 N.E. 617, 77 A.L.R. 1039.

The Massachusetts cases sometimes speak of this as an application of the doctrine of "estoppel". McLearn v. Hill, supra; Hayes v. Gessner, 1944, 315 Mass. 366, 52 N.E.2d 968. It is not the conventional estoppel in pais, where a party who has made a false representation of fact, upon the faith of which the other party has been reasonably induced to make a detrimental change of position, is "estopped" to deny the truth of the representation he has made. Nor is it an instance of the doctrine of "promissory estoppel" under which a promise, though not supported by a technical "consideration", is enforceable in assumpsit where the promise has reasonably induced action or forbearance of a definite and substantial character on the part of the promisee. American Law Institute, Restatement of Contracts, § 90. The present action sounds in tort for personal injuries, and, the defendant being precluded from resting on the statute of limitations, the amount of recovery is based upon the damages proved to the satisfaction of the jury—it is therefore immaterial that the insurance adjuster made no promise to settle for a definite sum.

Whether "estoppel" is the right word is an unimportant matter of terminology. What counts is the substantive result. Under the old strict differentiation between law and equity, perhaps the plaintiff would have been required to file a bill in equity setting up the circumstances under which, in equity and good conscience, the defendant should be precluded from insisting upon the bar of the statute and asking for an injunction against the pleading of such defense in the pending law action, as was done in Howard v. West Jersey R. R. Co., 1928, 102 N.J.Eq. 517, 141 A. 755. But the Massachusetts decisions have sanctioned in the action at law what is in effect an equitable replication to the plea in bar.

In the present case the jury was warranted in finding that the insurance adjuster, who under the terms of the policy acted as agent of the defendant in negotiating a settlement, induced the plaintiff not to engage a lawyer and not to file a complaint within the short statutory period upon his assurance that a lawyer would not be needed, that liability would not be contested, and that a settlement would be made for plaintiff's hospital bills, her injuries and suffering, when she got well and the full extent of her injuries became manifest. The facts of the case closely parallel those in Hayes v. Gessner, 1944, 315 Mass. 366, 52 N.E.2d 968, and in Howard v. West Jersey R. R. Co., 1928, 102 N.J.Eq. 517, 141 A. 755, in both of which cases the defendant was not allowed to take advantage of the statute of limitations. The Howard case was cited with approval by the Massachusetts court in McLearn v. Hill, 1931, 276 Mass. 519, 525, 177 N.E. 617, 77 A.L. R. 1039.

Defendant further contends that the plaintiff has become disentitled to invoke this so-called doctrine of estoppel because she did not file her complaint until after the lapse of almost two years from the date the insurance adjuster told her that it was "too late", that she was "out of luck", and that the statute of limitations would be insisted upon as a bar to recovery. Since what I have termed the "equitable replication" to the plea of the statute depends upon equitable considerations, it is possible that the plaintiff might be barred by laches from obtaining what amounts to equitable relief against the setting up of the statute of limitations by the defendant. But "laches is not mere delay, but delay that works disadvantage to another." Calkins v. Wire Hardware Co., 1929, 267 Mass. 52, 69, 165 N.E. 889, 897. There is nothing in the record to show that the defendant has been prejudiced by the plaintiff's failure to bring suit immediately after the insurance adjuster repudiated liability. The defendant did not request a charge by the trial judge on this theory of the case. Indeed, as Judge MAHONEY'S opinion

points out, the defendant did not raise any question of laches in the District Court until after judgment for the plaintiff had been entered and appeal had been taken to this court. This was too late.