ROSAMOND MACKEEN & another[1] *vs.* ARLINE M. KASINSKAS.

Middlesex.    February 7, 1956. — March 7, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Estoppel. Agency,* Scope of authority or employment, Insurance adjuster. *Limitations, Statute of. Insurance,* Adjuster.

The insurer under a motor vehicle liability policy was bound by representations respecting settlement made by its adjuster in the course of conversations with persons injured by the operation of the vehicle covered by the insurance.    [697–698]

A finding that the defendant in an action for personal injuries sustained by two women in a collision of automobiles was estopped from setting up the one year statute of limitations as a defence was warranted by evidence that during the six months following the accident an authorized adjuster of the defendant's automobile insurer made representations to them which led them reasonably to believe that, when they had fully recovered from their injuries and were through treatment by doctors and were back to work, their damages for pain and suffering, doctors' bills, and loss of time from work could definitely be determined and would then be paid by the insurer without the necessity of their bringing action, and that because of the representa-

---

[1] Ruth MacKeen, her daughter-in-law.

tions the plaintiffs, who were under medical treatment until long after the year following the accident had expired, refrained from consulting a lawyer and instituting the action until after its expiration. [698]

TORT. Writ in the Superior Court dated August 10, 1951.

The action was tried before *Hurley*, J.

*John L. Fitzpatrick*, for the defendant.

*Joseph Gorrasi*, for the plaintiffs.

COUNIHAN, J. On February 22, 1950, the plaintiffs suffered personal injuries as a result of a collision of an automobile in which they were riding in Medford with an automobile operated by the defendant. The plaintiffs did not commence this action to recover for such injuries until August 10, 1951, which was after the expiration of the year allowed by G. L. (Ter. Ed.) c. 260, § 4,[1] as amended. In her answer the defendant sets up this statute as a bar to this action.

The action comes here upon the defendant's exception to the denial of her motion for directed verdicts.

The sole question presented to us is whether the evidence would warrant a finding that the defendant was estopped from setting up the statute as a defence by reason of the conduct of one Hughes, an adjuster for an insurance company which had issued a certificate under G. L. (Ter. Ed.) c. 90, §§ 34A and 34B, as amended, covering the automobile operated by the defendant. There was no error.

The solution of this question depends upon the effect of certain representations made to each of the plaintiffs by the adjuster. The evidence in this respect may be summarized as follows: A Dr. Atwood treated both plaintiffs for their injuries. Shortly after the accident, in March, 1950, the doctor introduced Ruth to Hughes at the doctor's office. Ruth testified that Hughes, after taking a statement from her, said to her that "I would not have to bother with getting a lawyer or suing the company as they would take care of everything. Just do as my doctor said, and everything

---

[1] See now St. 1955, c. 235, § 1, providing for two years in certain circumstances.

will be all right." Dr. Atwood corroborated these statements of the adjuster. This was the only talk Ruth had with Hughes. Rosamond testified that sometime in May, 1950, Hughes came to see her at her place of employment, and that he said to her, "I was down to Dr. Atwood's. I talked with your daughter-in-law, and I have come to tell you the same thing that I told her. . . . So he said to me there was no need of me getting a lawyer. I shouldn't sue the company. They would take care of my bills, my expenses, my doctors, and for my pain and suffering." She saw him again at her home early in July, 1950, when he said to her, "Do as your doctor says. Dr. Atwood is a good, reputable doctor, and whatever he says we will agree with. . . . You have nothing to worry about, you will be taken care of." Later (apparently in the same conversation) "He repeated the doctor's bills would be taken care of; my expense, my pain and suffering, and for my time out of work." After this she had no other talk with Hughes. Dr. Atwood and another doctor treated Ruth until at least November 15, 1952, and Dr. Atwood and other doctors treated Rosamond up to the time of the trial. Hughes admitted that he talked with each of the plaintiffs at the times they mentioned but he denied that he ever made either of them any offer.

The plaintiffs contend that because of these representations of Hughes they were induced to refrain from consulting a lawyer and from instituting a suit to recover for their injuries. They assert that, by reason of this conduct of the adjuster, the defendant and the company which covered the automobile she was operating are estopped from setting up the statute of limitations. We agree with this contention.

In *Bergeron* v. *Mansour*, 152 Fed. (2d) 27, 31 (C. C. A. 1), which was governed by Massachusetts substantive law and where c. 260, § 4, was pleaded in defence of a similar tort action, it was said: "The only authority which the agent need have to constitute his conduct an estoppel is the authority to promise a settlement. It is clear that all insurance adjusters have at least apparent authority to make

promises of settlement. The principal function of insurance company adjusters is to determine the liability of the insured and to make arrangements for settling claims." We are of opinion that the company is bound by the representations of the adjuster to these plaintiffs.

We think it plain that the representations of the adjuster in the case at bar were such as to lead the plaintiffs reasonably to believe that, when they had fully recovered from their injuries and were through treating with doctors and were back to work, their damages for pain and suffering, doctors' bills, and loss of time from work could definitely be determined, and that the insurer would then pay them for all such damages.

This court on at least four occasions has considered circumstances similar to those in the case at bar. In *McLearn* v. *Hill,* 276 Mass. 519, *Hayes* v. *Gessner,* 315 Mass. 366, and *Knight* v. *Lawrence,* 331 Mass. 293, we held that a defendant could be estopped from setting up c. 260, § 4, as a defence when statements of an agent of the insurer, made with intent to mislead and deceive injured parties, did deceive such parties. In *McLearn* v. *Hill, supra,* at page 524, it was said that it was not necessary to charge deceit, bad faith, or actual fraud. "Facts falling short of these elements may constitute conduct contrary to general principles of fair dealing and to the good conscience which ought to actuate individuals and which it is the design of courts to enforce. It is in the main to accomplish the prevention of results contrary to good conscience and fair dealing that the doctrine of estoppel has been formulated and taken its place as a part of the law." We think that the facts set forth in the case at bar bring it within the doctrine of estoppel as thus defined.

In the fourth case, *Ford* v. *Rogovin,* 289 Mass. 549, considered by this court, the principle of estoppel was held not to apply. That case, however, is distinguishable from the case at bar. There the defendant told the plaintiff's attorney that he would "see to it that his insurance company would settle the case" (page 551). But there was no evi-

dence in that case that the defendant had any authority to bind his insurer and the plaintiff's attorney knew of this lack of authority.

The point in the case at bar is debatable but on the whole we think it comes within the principles set forth in the cases relied upon by the plaintiffs to which we have referred. There was sufficient evidence of estoppel to permit the case to go to the jury.

*Exceptions overruled.*