**Jeanne GARFINKLE et al.,
Plaintiffs, Appellants,**

v.

**CHESTNUT HILL MORTGAGE
CORPORATION et al.,
Defendants, Appellees.**

No. 81–1595.

United States Court of Appeals,
First Circuit.

Argued May 4, 1982.

Decided May 27, 1982.

Francis V. Matera, Boston, Mass., with whom Mark M. Freeman, Boston, Mass., was on brief, for plaintiffs, appellants.

Bernard P. Rome, Boston, Mass., with whom Alice M. Vogler, and Wasserman & Salter, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

The question in this diversity case is whether defendant Chestnut Hill Mortgage Corporation, Arnold Levitt, principal officer, successfully executed a piece of swordsmanship, or whether it out-fenced itself. We conclude the latter.

Simplifying the figures for present purposes (there were actually three different notes), in 1973 one George Garfinkle, hereinafter George, needed money sufficiently that he borrowed $110,000 from defendant at the rate of 2% a month, plus an initial bonus, and executed a note therefor. The note was co-signed by plaintiffs Jeanne and Joel Garfinkle. Plaintiffs furnished collateral in the form of a note payable to them secured by a mortgage, with a face value of $410,000. A principal payment of $12,000 was due on George's note on October 1, 1974, and not paid, and on April 9, 1975, defendant sold the collateral at public auction pursuant to the written terms of the note. Plaintiffs sue to recover for conversion of the collateral on the basis of an alleged oral modification of the note.

Although suit was brought in 1975, and discovery completed, it was not reached for trial until 1981. On the second day, a jury having been empanelled, plaintiffs made their opening and defendant responded with a motion for directed verdict. This we treat as equivalent to a motion to dismiss for failure to state a claim. F.R.Civ.P. 12(b)(6). After a considerable bench con-

ference the court granted the motion, but gave plaintiffs an opportunity to move for reconsideration. The motion was duly made, but the court adhered to its position. Plaintiffs appeal.

By pretrial stipulation it had been agreed that the controverted factual issues were whether there was a waiver of the principal payment due October 1, 1974, and whether there was a "timely tender on April 14, 1975, of all the monies owed at that time." The questions of law were "those implicit in the facts."

In plaintiffs' opening it appeared that the October 1 principal payment was not made when due, but that within the note's 15-day grace period Levitt got in touch with George's lawyer and

"[a]s a result of that, George Garfinkle went to see Mr. Levitt. Mr. Levitt says, 'Well, I want to get my money now. I want you to pay some principal payments on these mortgages.'

"George said, 'As far as I'm concerned, I can arrange it all right, but it would be helpful to me if you would forebear or push off the payment of the principal until such time as I'm able to do it, and I'll pay you whenever I can on it.'

"Mr. Levitt said, 'That's all right, and go ahead and do it.' "

It further appeared that George maintained the interest payments, but on April 2, 1975, Levitt informed him that he must pay the entire accelerated principal forthwith, and that failing that, the collateral would be immediately sold at public auction in accordance with the terms of the agreement; that neither George, nor the plaintiffs, were able to make that payment; that the auction was held on April 9, defendant purchasing the collateral, and that on April 14 plaintiffs, having succeeded in obtaining $12,000 and the April, 1975 interest, tendered same by bank certified check to defendant, but it was refused.

In the bench conference defendant stated it was not bound by the October, 1974 waiver conversation because, as an agreement, it

lacked consideration, citing *McCarthy v. Simon*, 1924, 247 Mass. 514, 142 N.E. 806. Plaintiffs offered a number of responses, including that their continuing to pay the interest was consideration. This last the court rejected on the principle that this payment was George's legal obligation, anyway, and so could not support an independent promise. We will assume this to be the law of Massachusetts, *cf. McCarthy v. Simon*, ante; *Wilson v. Powers*, 1881, 130 Mass. 127, although, as a general proposition, a lender receiving a high rate of interest might seem benefited by the opportunity to collect such for a longer period in return for the forbearance.[1] Even if that proposition were true, we doubt that there could be an extension beyond what defendant was willing to agree to. We need not, however, pursue this question as there is a much clearer answer, quite unconnected with contractual consideration.

■ We know of no reported case where a creditor has sought to pull the rug out from under a debtor in such a fashion as this, but the principle is similar to where a debtor, having led his creditor to believe he would not assert the statute of limitations, has, after the period has passed, sought to claim it. *E.g., MacKeen v. Kasinskas*, 1956, 333 Mass. 695, 132 N.E.2d 732. As to such a practice we said in *Bergeron v. Mansour*, 1 Cir., 1945, 152 F.2d 27, cited with approval in *MacKeen*,

"Morality and justice form the basis for equitable estoppel and neither consideration nor legal obligation are required to support it." (152 F.2d at 30)

*See also, Precious Metal Assoc. v. Commodity Futures*, 1 Cir., 1980, 620 F.2d 900, 908. It would seem too plain to argue that defendant, similarly, could not, in morality and justice, consent to let a payment date go by when there was still opportunity to meet it, and then turn around and say there was a default.

This does not mean that defendant could not terminate its waiver, but, in fairness, it

---

1. It should be noted that the interest rate of 24% annually, high by even today's standards, was agreed to in 1973. Not surprisingly, the note limited plaintiffs' right to prepay principal.

could do so only on reasonable notice. *McCarthy v. Simon*, ante, is not apposite. There, after a note became due, the maker informed the payee that he was ill and could not pay, and the payee told him not to worry, he could pay later. The court held the waiver void for lack of consideration. There was, however, this vital difference. In the case at bar the note contained a 15-day grace period and George, according to the opening, which must be accepted for present purposes, said he was able to pay the $12,000 principal, but would rather wait, to which defendant agreed. Had defendant not agreed there would still have been time for George to pay. Defendant could not change the rules without affording George a new and adequate opportunity.

The most, in morality and justice, that defendant could be permitted to do on April 2, 1975, was to inform George it had decided to wait no longer, and that the principal payments were now due, in turn triggering the 15-day grace period, to afford the debtors a reasonable opportunity. Only when that period had expired without tender of the $12,000, plus monthly interest, could the note be declared in default and accelerated, and demand be made for the face amount. This tender was made within the 15 days, and that should have been the end of it.[2]

██ It is true that plaintiffs' counsel may have been insufficiently articulate to phrase their claim in this precise framework, but he did argue to the court that plaintiffs were entitled to 15 days to cure the default. The stated facts made out a claim. Nor do we have any sympathy with defendant if it be thought plaintiffs failed to state their claim sufficiently clearly. The court, very reasonably, asked why de-

fendant had not earlier moved for summary judgment, when it had a complete defense. Defendant's enigmatic reply is illuminative, "I seriously considered it, Judge, and I decided against it. Maybe I was wrong, but I had certain reasons." The most likely reason occurring to us, in light of what occurred, was a hope of catching opposing counsel unawares by this substitute motion. Taking all inferences in favor of plaintiffs, *Tassinari v. Massachusetts Turnpike Authority*, 1964, 347 Mass. 222, 223, 197 N.E.2d 584, we hold it was inadequate.

*Reversed and remanded for trial.*[3]

BREYER, Circuit Judge (concurring).

I join the court's opinion and concur only lest the "assumption" about consideration be taken as allowing the district court's decision to stand as precedent on this point. As I read it, plaintiff's counsel, in his opening statement, alleged that the defendant had agreed to extend the time for paying the principal (effectively turning the obligation into a demand note), provided that plaintiff would pay additional interest during this additional time. At 24 percent per year that comes to about $8 per day or $240 per additional month. If a promise to pay interest is good consideration for a loan in the first place, why isn't a promise to pay more interest good consideration for a promise to extend the loan for an additional day, month or year—at least when that additional interest is explicitly "bargained for?" Garfinkle had the $12,000 for an extra day or an extra month or whatever; and Levitt had an additional $8 per day in interest. Interest of $8 per day, or $240 per month, or $2880 per year is a long way from a peppercorn. I do not read *McCarthy v.*

---

**2.** In oral argument defendant sought further to obfuscate the case by criticizing the tender for not including a late payment penalty. The payments were not "late" because they had not been sought. Late payments were chargeable only "for every day [of default] after the expiration of the grace period of fifteen days." Due to defendant's October waiver, the grace period never ran out. Moreover, the tender was rejected because allegedly untimely, not because of an alleged minor, correctable, deficiency.

*Cf. Milton Ice Co. v. Travelers Indemnity Co.*, 1947, 320 Mass. 719, 721–22, 71 N.E.2d 232.

**3.** We make no order as to the trial except what is implicit herein, but we do remark that the rejection of the tender on April 14, 1975, if that occurred, stopped the running of interest on that amount, and that defendant's foreclosure reduced all other interest thereafter to the statutory amount. Defendant could not have it both ways.

*Simon*, 247 Mass. 514, 142 N.E. 806 (1924) as holding the contrary. *Wilson v. Powers*, 130 Mass. 127 (1881) is more difficult; but given the lack of explanation in this 100 year old case, its special and appealing fact situation, the lack of any more modern authority called to our attention from Massachusetts or elsewhere, and the lack of any apparent reason for denying the existence of consideration (at least when the additional interest was made a specific part of the bargain), I would not conclude that *Wilson* states the current law of the Commonwealth of Massachusetts.