**SEA–LAND SERVICE, INC.,**
Plaintiff, Appellee,

v.

**R.V. D'ALFONSO CO., INC.,**
Defendant, Appellant.

No. 83–1625.

United States Court of Appeals,
First Circuit.

Argued Jan. 4, 1984.
Decided Feb. 3, 1984.

F. Joseph Gentili, Lexington, Mass., with whom Russian & Labonte, Lexington, Mass., was on brief, for defendant, appellant.

Bertram E. Snyder, Boston, Mass., with whom Harold W. Pskowski, and Hoch, Flanagan & Snyder, P.C., Boston, Mass., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, ALDRICH, Circuit Judge, and PETTINE,* Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

In December, 1980 plaintiff Sea-Land Service, Inc., an ocean freight forwarder, arranged for the shipment of goods belonging to defendant R.V. D'Alfonso, Inc., from Italy to Boston. Defendant paid the freight charges, but on receipt of the goods, on January 12, 1981, claimed damage in transit in the amount of $16,226. Six other shipments were made for defendant, the charges coming to $15,320. Plaintiff declined to pay the damage claim, and defendant, in turn, declined to pay the $15,320.

In November, 1981 plaintiff filed the present complaint to recover the freight charges. Prior to the date defendant's response was due, the parties agreed to extend the time. The content of the document filed was as follows.

"It is hereby stipulated by the plaintiff, Sea-Land Service, Inc., and the defendant R.V. D'Alfonso Co., Inc., that the time

* Of the District of Rhode Island, sitting by designation.

within which defendant *may respond* to plaintiff's Complaint be extended up to and including December 31, 1981." (Emphasis suppl.)

Two more stipulations were filed, identical except as to date, ultimately extending the time to respond to January 19, 1981. On that day defendant filed an answer to the complaint, and a counterclaim demanding the $16,226. On January 29 plaintiff filed its answer to the counterclaim, asserting, inter alia, the statute of limitations. This being a COGSA claim, the statute had, indeed, run one week before the counterclaim was filed. Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6).

After various discovery procedures, it appearing that there was no defense offered to any of the freight bills, plaintiff moved for summary judgment on the complaint on the merits—the granting of which was not objected to—and on the counterclaim on the ground of the statute. With respect to the counterclaim, the court held that the burden was on defendant to show that plaintiff intended a waiver of the statute, and that it failed because the language of the stipulation, having been chosen by defendant, must be construed against it. Hence there was "no genuine issue of fact."

The court, at the same time, acknowledged the possibility of further evidence changing the result, and offered the parties the opportunity of filing affidavits. This was done, but the court, in a second memorandum, concluded they effected no change. From the resulting summary judgment, defendant appeals. We reverse.

■ The court was correct that there was a burden on defendant. The burden was not to show an affirmative intent to waive the statute, but merely to show conduct leading defendant to believe there would be no consequences from a late filing. *Bergeron v. Mansour*, 1 Cir., 1945, 152 F.2d 27, 30. *See also, Garfinkle v. Chestnut Hill Mort. Corp.*, 1 Cir., 1982, 679 F.2d 276, 277; *LaBonte v. New York, New Haven & Hartford R. Co.*, 1960, 341 Mass. 127, 167 N.E.2d 629. As we said in *Bergeron, ante*, at 30,

"A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made. [Citation omitted.] Nor is an express promise to waive the statute of limitations necessary to estop a party from pleading the statute as a defense."

Obviously, defendant changed its position; had plaintiff declined to stipulate, there would have been ample time to file the counterclaim before the statute had run. To let defendant believe it need not do this, and then take advantage of the delay, would seem the heighth of unfairness. The only question to us, accordingly, was whether plaintiff reasonably understood, either from the language, or the circumstances, that a counterclaim was within the purview of the stipulation's word "respond."

The court was correct that this was a permissive counterclaim. Nonetheless, a permissive as well as a compulsory counterclaim "may ... diminish or defeat the recovery sought by the opposing party," F.R. Civ.P. 13(c), and is considered part of the answer. F.R.Civ.P. 7(a) reads, "(a) *Pleadings.* There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim ...." Further, F.R.Civ.P. 12(b) uses "responsive pleading" to describe any permitted response to a claim. The court gave no reason why a permissive counterclaim should not be considered a responsive pleading, and we do not share its finding of ambiguity. *Cf. Bechtel v. Liberty Nat. Bank*, 9 Cir., 1976, 534 F.2d 1335, 1341, "[I]f an extension of time has been allowed for filing a responsive pleading, logic and reason would appear to dictate that the extension should apply to a motion as well." If one states the general, there should be no need to specify the particular; the whole includes all of its parts.

■ Even, however, if the word "respond" should be considered ambiguous, with its meaning subject to parol evidence

and governed by the particular understanding of the parties, we believe the court applied too strict a standard. The principle of construing ambiguous language against the drafter is but one of the rules of construction, *see Chelsea Industries, Inc. v. AccuRay Leasing Corp.,* 1 Cir., 1983, 699 F.2d 58, 61; one must look to all the circumstances. *Rizzo v. Cunningham,* 1939, 303 Mass. 16, 20–21, 20 N.E.2d 471, cited with approval in *Gillentine v. McKeand,* 1 Cir., 1970, 426 F.2d 717, 721 n. 13. There were more important circumstances here than the fact that defendant drew the stipulation. The sole issue between the parties from the beginning was the dispute over the $16,228 damage claim; it is apparent that defendant was withholding payment of due freight charges simply as an exercise in self-help to secure what it felt was owed it for damages. Nor was plaintiff's counsel in ignorance; when he agreed to the extension he was aware of there being a further dispute.[1] These circumstances confirm rather than rebut, what we regard as included within the word "respond" in any event.

This reasoning does not disturb our dissenting brother; the fault is that it fails to go far enough. He agrees that the stipulation "of course extended the 20 days as to all matters which defendant was entitled to file as part of his answer, including under present day rules, permissive counterclaims." He does not dispute, footnote 1, that plaintiff's counsel knew of a factual basis for a counterclaim, a matter of great importance to us, even if counsel did not know the precise details. "But that is not the issue. The issue is whether the lawyers also meant to waive the statute of limitations."

Our brother's concern goes to the ethical impropriety of waiving a client's defense. But what did counsel waive? The statute of limitations is not a matter of dollars and cents; its purpose is to protect against stale claims. Had counsel not consented to a late filing, this claim would have been timely filed. We cannot share the thought that it would be unethical not to assert a defense that would never have existed but for counsel's conduct. The facts in *Bergeron v. Mansour* differ, but the principle is the same: If one's "conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon representations made," that should be it, no express promise is needed for the statute.

■ Short extensions of time are normal courtesies between lawyers. We agree with our brother that a lawyer cannot, simply as a matter of courtesy, waive an accrued defense, but that is not the same thing as extending a courtesy when the defense had not accrued, and never would have accrued had the courtesy not been extended. Ethical consideration 7–7, cited by our brother, states that lawyers should not make decisions "substantially prejudicing" the rights of their client. We see no substantial prejudice effected here. The court's ruling resulted in a windfall for the plaintiff and inflicted enormous loss to the defendant. We cannot agree with our brother that both lawyers were in a vise.

We observe, finally, that the court's strict rule could create a serious problem for lawyers vis-a-vis their clients. Must a lawyer assert technical constructions of what was extended as a courtesy, when, later, a substantive advantage for his client is perceived?[2] To do so could well be against a lawyer's personal interest in his reputation with the bar. Plaintiff's counsel here was quick to say in his affidavit that he did not intend "sharp" practice. This may well be

1. "I knew R.V. D'Alfonso Co., Inc. had a dispute with Sea-Land Service, Inc. ('Sea-Land') over other claims, but I did not receive from Sea-Land its file with respect to the other disputes until January 18."

2. That plaintiff's counsel was not concerned with the language of the stipulation at the time is confirmed by his affidavit. "I did not pre-pare the extensions. I did not select the wording. I did not personally sign the extensions. Mr. Boluch signed my name. I did not 'discuss' the language of the extensions. At most, Mr. Boluch may have read the first proposed extension to me. I have no memory whether he did or not."

entirely true, but from defendant's standpoint the result of the court's construction is the same. It is important to be careful with the language of one's agreements, but to apply a rule approaching strictissmi juris to lawyers' daily contacts inter sese would be unfortunate quite apart from and far beyond the result reached in this particular case.

■ Defendant having reasonably understood that it was not to be penalized for a brief delay in filing its counterclaim, and having used appropriate language therefor, the court should have given that understanding a fair effect.

*Reversed.*

LEVIN H. CAMPBELL, Chief Judge (dissenting).

I disagree with my colleagues because I believe the stipulation signed by the two attorneys—saying only "that the time within which defendant may respond to plaintiff's Complaint be extended ...."—was, at best, ambiguous as to whether it waived the statute of limitations applicable to defendant's independent cause of action under the Carriage of Goods by Sea Act which defendant eventually pleaded as a counterclaim.[1] On its face, the stipulation seems only to have waived the 20-day period for answering provided by Fed.R.Civ.P. 12(a). Because the stipulation was ambiguous in this regard, I believe the district court was exactly right in holding that the ambiguity should be held against the lawyer who drafted it.

This court begins by stating that there was no burden on defendant "to show an affirmative intent to waive the statute, but merely to show conduct leading defendant to believe there would be no consequences from a late filing." Perhaps so. But I can't discern any "conduct" by plaintiff's lawyer that might arguably have led defendant "to believe there would be no consequences from a late filing" *other* than his joining in the stipulation. If so, I do not see what the cases on estoppel add to my brothers' position, since the only question is what is a reasonable construction of the stipulation: either it reasonably implies a waiver of the statute of limitations relative to defendant's separate cause of action against plaintiff (as well as a waiver of the 20-day period for filing an answer under Fed.R.Civ.P. 12(a)) or it does not. Judge Keeton thought it was uncertain what the stipulation meant, and therefore held that the defendant's attorney, who drafted the document and failed to make the parties' intentions clearer, must bear the onus of the omission.

The court cites various cases in support of its estoppel theory, but I see no connection between the facts in a case like *Bergeron v. Mansour,* 152 F.2d 27 (1st Cir.1945), and this one. In *Bergeron* a claims adjustor engaged in a course of conduct which misled unsophisticated people causing them to fail to pursue their claim until after it was time barred. (The adjustor's misconduct included encouraging the victims not to hire a lawyer). Here the imputed "victim" is a lawyer himself. There is no evidence the plaintiff's lawyer gave assurances beyond those reflected in the language of the stipulation. The question is simply, what did the parties reasonably understand—a question of interpretation, not estoppel.

My colleagues would apparently read the language extending the time for response as not only extending the 20-day period for answering, *see* Fed.R.Civ.P. 12(a), but as implying a guarantee to hold defendant harmless against any separate time-bars—like the statute of limitations applicable to defendant's maritime claim—which might

---

1. The counterclaim, being permissive, could of course have been brought by defendant as a separate action anytime within the limitations period. The statute of limitations, established by 46 U.S.C. § 1303(6), limited the bringing of such an action to within one year. Whether defendant brought this action within the one-year statute is, of course, a separate issue from whether the defendant complied with Fed.R. Civ.P. 12(a), which prescribes that an answer (and associated responsive pleadings) be served within 20 days. A counterclaim might be barred by the statute of limitations even though timely pleaded under the rules, and vice versa.

create a separate impediment to the late filing of a particular affirmative claim. My colleagues, indeed, reflect a sense of outrage—they seem to believe defendant's attorney was led down the garden path. But I see no justification for the latter assumption.

First, since defendant's attorney drafted the stipulation, which omitted any reference to the unrelated statute of limitations relative to the subsequent counterclaim, it is hard to accuse plaintiff's attorney of having misled him.

Second, there is no evidence that plaintiff's attorney was any more aware of the potential statute of limitations problem when the stipulation was executed and renewed than was defendant's attorney. When first executed, the extension did not go beyond the limitations period. Both attorneys were seemingly thinking only in terms of an extension of the Rule 12(a) time for filing responsive pleadings. Later, after defendant filed his counterclaim, the statute of limitations problem became apparent.[2] When this occurred, plaintiff's attorney could not take the generous stance my colleagues adopt. He had an ethical obligation to his client to plead the statute. Under Ethical Consideration 7–7, which supplements Canon 7 of the Rules of Professional Responsibility, a lawyer may not on his own waive affirmative defenses. The ethical consideration provides,

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, the lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client ... As typical examples in civil cases, it is for the client to decide whether he will accept a settle-

ment offer or whether he will waive his right to plead an affirmative defense. The statute of limitations (as opposed to the ordinary time limits for filing pleadings) is such a defense. Accordingly I think my colleagues sense of outrage is misplaced. Both lawyers were, at that moment, in a vise.

An argument can doubtless be made, as my colleagues do, for deriving from the stipulation's wording an implied waiver of the statute of limitations. But I think a more powerful argument can be made the other way. Extending the time to "respond to plaintiff's Complaint" seems obviously directed towards extending the rules' period for filing pleadings; it is not an appropriate way of saying that one is also tolling the statute of limitations on any independent lawsuit defendant may have against plaintiff. Nor is it an open-ended promise, as my brothers would have it, to relieve defendant from *all* "consequences from a late filing." The stipulation was between attorneys, and, as noted, while an attorney may grant courtesy extensions of time for filing pleadings, he may not, on his own initiative, grant extensions of the statute of limitations. This cuts against our giving the stipulation the broad construction my colleagues prefer, for if we construe professional courtesy to encompass such an implied waiver, we are undermining the Canons. Moreover, my brothers' construction raises real problems as to how far they want to go: surely every courtesy extension of the time to plead does not imply a waiver of the statute of limitations with respect to any and all affirmative claims the defendant thinks he has against the plaintiff. Yet all such claims might be pleaded as permissive counterclaims. Fed.R.Civ.P. 13(b).

Given the ethical problem from implying a waiver, and the potential difficulty of

2. The difference between granting an extension of time to file pleadings under the federal rules and waiving statutes of limitations which may apply to particular affirmative claims that a defendant may wish to file as permissive counterclaims, is highlighted by the general rule that a permissive counterclaim, which arises out of a different transaction than the one sued on, will not defeat the plaintiff's recovery where the claim alleged as set off is barred by a statute of limitations. This is so even if the original complaint was filed before the statute had run; unlike a compulsory counterclaim the filing of a permissive counterclaim is not deemed to relate back. *See, e.g.,* 3 Moore, *Federal Practice* ¶ 13.11 (2d ed. 1983).

knowing which statutes should be deemed waived in situations like this, it would seem more sensible to find a waiver of the statute of limitations only when the agreement is reasonably explicit. This is especially true where, as here, defendant's lawyer drew the stipulation. Why is not defendant's lawyer, who *drafted* the stipulation, in the best position to anticipate his own statute of limitations problem associated with the bringing of what is, in essence, a separate lawsuit? Why should not he, rather than plaintiff's lawyer be expected to anticipate the issue by appropriate language? Had he done so here, plaintiff's lawyer, duly alerted, might well have refused to sign. Today's holding places plaintiff's lawyer in the unfair position of having, perhaps unwittingly and perhaps in violation of ethical canons, surrendered his own client's rights under the statute of limitations.[3] If one must choose between the two lawyers, surely it is defendant's lawyer who should have foreseen the statute and taken steps to deal with it. What the court is doing, in my view, is to hold the most culpable actor blameless.

I do not disagree that the word "respond" in the stipulation encompasses all responsive pleadings including counterclaims. Since the stipulation was intended to do no more than extend the Rule 12(a) period for filing responsive pleadings, it of course extended the 20 days as to all matters which defendant was entitled to file as part of his answer, including under present day rules, permissive counterclaims. But that is not the issue.[4] The issue is whether the lawyers also meant to waive the separate statute of limitations which had the effect, quite apart from Rule 12(a), of barring defendant's independent maritime claim—a claim which while it could be filed as a permissive counterclaim was, in fact, an independent cause of action, with its own statute of limitations. Defendant could be entirely timely vis-a-vis the Federal Rules but still be out of court with respect to that independent cause.

I think the district court put its finger on the dispositive issue—the fact that it was defendant's lawyer who drafted the stipulation. He, not plaintiff's lawyer, was being paid by his client to protect that client's rights. If someone must suffer, he or his client should be the one. Under the court's disposition, it is plaintiff's lawyer who suffers—for what misconduct I am at a loss to fathom. It may be unfortunate that no one pointed out the statute of limitations problem until too late, but plaintiff's lawyer should not be blamed—he did not draft the stipulation nor did he do anything improper nor did he necessarily even identify the problem before the time had run. I dissent because, in its zeal to do justice, I think the court has done the reverse. I would affirm the district court.

---

**3.** My brothers go so far as to suggest that no "waiver" as such of the statute of limitations need be implied here because the statute of limitations defense had not yet accrued when the relevant stipulation was entered into. I find this distinction extraordinarily refined. The statute gives the client the right to expect repose after the expiration of one year. When lawyers grant courtesies to one another, no one would have thought, until today, that potentially they were also altering clients' rights which the ethical considerations deem too important for a lawyer to alter on his own initiative.

**4.** The absence of any explicit reference to counterclaim is relevant when one comes to the different question whether the parties intended to waive the statute of limitations material only to the counterclaim. Had the stipulation specifically mentioned "counterclaim" it would at least have called attention to the possibility that something besides the usual time periods applicable to *all* responsive pleadings were being waived. Its failure to do so is, therefore, a further reason for not implying a waiver of the statute of limitations from the general extension.