*Municipal Court of the City of Boston*

No. 36829

**STEPHEN H. SWIFT**

v.

**AMERICAN UNIVERSAL INSURANCE CO.**

(December 11—December 17, 1964)

*Present*: Adlow, C. J., Riley & Foster, JJ.
  Case tried to *Shamon, J.*

*Adlow, C. J.* Action of contract on a policy of insurance to recover for personal property stolen from a yacht during the life of the policy. The defendant based its denial of responsibility on the fact that (1) the loss did not come within the terms of the policy of insurance, and (2) the suit was not commenced within 12 months of the loss, as provided by the policy.

*There was evidence that* on December 12, 1958 the American Universal Insurance Company of Providence, Rhode Island, provided

coverage in the amount of $35,000 on the yacht "Caryn", a 97' 9" ketch for a period of one year from the date of the policy. Pertinent to the issues raised by this report were the following provisions in the policy:

"Perils. Touching the adventures and perils which we, the Assurers, are contented to bear, and do take upon us, they are of the seas (meaning waters permitted hereunder), fire, lightning, earthquake, assailing thieves, theft of the entire yacht, jettisons, barratry of the Master and mariners, and of all other like perils, losses and misfortunes, that have or shall come to hurt, detriment or damage of said yacht or any part thereof", and under general condition:

Limit of time for suit.

"No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless commenced with twelve (12) months next after the happening of the loss".

*At the trial there was evidence that* the plaintiff, Stephen H. Swift, was the owner of the insured yacht, "Caryn"; that it was a 97 foot sailing vessel with a 21 foot beam, drawing 15 feet; that on May 28, 1959 its crew consisted of one Percy Langhead; George M. Barros, steward; and the plaintiff; that on the night of Thursday, May 28, 1959, it tied up at the pier of the Victor Tracy Yacht Corporation in Neponset, Mass.; that the plaintiff and his crew, after making sure that the cabins were securely locked, took

shore leave. When they returned on the morning of May 29, 1959 they discovered that a forced entry had been made into the cabin through a window and that articles of personal property amounting to $3600 were missing. The break was reported to the Harbor Police of the Boston Police Department.

*There was further evidence that* on May 29, 1959 the assured called one Ben Pease, of the office of Rogers and Hatfield, General Insurance Brokers, through whom he purchased the policy, and reported the loss; that within a few days one Ray Smith who was associated with Clark-Wickert Company, general adjuster for insurance companies, came aboard the yacht, inspected the main cabin where the damage occurred and took a list of the missing articles; that several days later the plaintiff was confined in the Mass. General Hospital for a back injury, where he remained until the end of August, 1959; that when he left the hospital he contacted Ben Pease relative to his claim; that thereafter he received a questionnaire from Clark-Wickert Company, the adjuster above mentioned; that he answered said questionnaire; that on February 9, 1960 and February 10, 1960 he further communicated with Ben Pease relative to the claim; that on May 11, 1960 the plaintiff accompanied by his attorney, one Alvin Hochberg of Boston, went to the office of Clark-Wickert and were requested by Ray Smith, who was associated with that firm

and who had originally inspected the vessel after the loss, to have the answers to their questionnaire typed and sent in right away. On this occasion Hochberg called to Smith's attention that the statute of limitations would run within two weeks, and Smith replied that the matter is now adjusted and that when the statement would be received in typewritten form it would be paid. On May 12, 1960 the plaintiff's wife mailed the answers to the questionnaire to Clark-Wickert Company.

*There was further evidence tending to show that* when the plaintiff notified Rogers and Hatfield of his loss, Ben Pease of the latter office wrote to the defendant company relative thereto, and he was authorized by the Insurer to turn the matter over to Clark-Wickert Company; that thereafter the said Ben Pease notified the plaintiff to take the matter up with Ray Smith of the Clark-Wickert Company.

At the close of the evidence the defendant requested the court to rule in effect that (1) the evidence did not warrant a finding for the plaintiff, and that (2) more than a year having elapsed between the alleged theft and the bringing of the suit, the action is barred by the provisions of the policy.

The court refused to rule as requested, and found for the plaintiff in the amount of $2,600, it having been agreed by the parties that the damages would be in this amount in the event of a finding for the plaintiff.

Being aggrieved by the refusal of the court

to rule as requested, the defendant brings this report.

In refusing to rule as requested by the defendant that the failure of the plaintiff to bring a writ within one year is fatal to his right to sue, the court found that the defendant by reason of its conduct is estopped to set up the one-year statute of limitations. There was ample evidence to support the facts on which this ruling was based. While the defendant has argued strenuously that none of the conduct of the adjusters or agents was binding on the defendants, there is nothing in the report to indicate that any of the evidence pertaining to Clark-Wickert Company, or its employee Ray Smith, or to Ben Pease, was objected to or challenged during the trial. The court had a right to assume on the basis of the evidence that Clark-Wickert Company and Ray Smith acted for the defendant and spoke for it. The situation is radically different from that in *Larner v. Mass. Bonding and Ins. Co.,* 238 Mass. 80, where the basic issue was whether the party with whom plaintiff dealt was authorized to act for the defendant. In the cause under review there was no question of the adjuster's authority to act for the defendant. Being vested with such authority, and having assured the plaintiff that the claim was settled, that it awaited only the filing of a typewritten statement, and, further, the assurance that it was unnecessary to bring suit because the payment on claim would be forthcoming in due course, all elements were

present to warrant the court in estopping the defendant from claiming the one year statute of limitations. *MacKeen v. Kasinskas,* 333 Mass. 695. In the light of the facts, the defense is no longer available to the defendant.

██ Whether the loss on which the claim is based was embraced by one of the perils insured against poses no serious problem. The clause in the policy relating to perils insured against is set forth in toto above. It appears to follow the language of policies issued in the 17th and 18th centuries. (See form of insurancy policy under Title, Insurance, Jacob's Law Dictionary—London, 1736). Among the contingencies provided against by the contract are "fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and mariners, and all other like perils, losses, and misfortunes". The undertaking of the defendant appears sufficiently broad to cover the theft suffered by the plaintiff.

In the absence of binding authority to guide us we must turn to rulings in analagous cases in other jurisdictions as well as to the considered reflections of text writers. From earliest times a distinction has been made between thefts committed by members of the crew and those committed by outsiders. Beawes' "Lex Mercatoria", 3d Ed. (1771), p. 266. A text writer has intimated that a taking by assailing thieves is achieved by "violence from without". Kent's Commentaries, Vol. III, 14th Ed., sec. 303, p. 492,

Note (d); See also *American Ins. Co. v. Bryan and Maitland,* 26 Wendell (NY) 563 (1841); *Atlantic Ins. Co. v. Storrow,* 5 Paige (NY) 285, 293 (1835).

These distinctions lose their significance in the cause under review. There was ample evidence to support the claim of the plaintiff that his loss was the consequence of a breaking and entering of the cabin of his yacht by outsiders while the crew was ashore. In our opinion men who board a vessel in the night time, break open a panel, gain access to a cabin, and proceed to loot the vessel are "assailing thieves" in both the literal and technical sense. Fortunately the coverage provided by this policy embraces "all other like perils, losses, and misfortunes". If any doubts persist as to whether those responsible for the plaintiff's loss were "assailing thieves" then the presence of this added clause covering "all other like perils" should suffice to confirm the defendant's responsibility. *Feinberg v. Insurance Co. of No. America,* 260 Fed. 2d, 523.

There was no error. *Report dismissed.*

Lawrence E. Cooke, of Boston, for the Plaintiff.
Louis K. Nathanson, of Boston, for the Defendant.