REYNOLDS INDUSTRIES, INC.,
Plaintiff-Appellant,

v.

MOBIL OIL CORPORATION,
Defendant-Appellee.

No. 1–14.

Temporary Emergency Court of Appeals.

Argued June 15, 1984.

Decided July 13, 1984.

Judgment Entered July 24, 1984.

Steven Schaars, Collier, Shannon, Rill & Scott, Washington, D.C., with whom Thomas J. Hamilton and Kevin F. Hartley, Washington, D.C., of the same firm, were on the brief for plaintiff-appellant.

Robert M. Gault, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., with whom Sharen Litwin and Louise Sawyer, Boston, Mass., of the same firm, were on the brief for defendant-appellee.

Before METZNER, POINTER and LACEY, Judges.

METZNER, Judge.

Plaintiff-appellant Reynolds Industries, Inc. ("Reynolds") appeals from an order of Honorable Arthur W. Garrity, Jr., United States District Judge for the District of Massachusetts, granting the motion of defendant Mobil Oil Corporation ("Mobil") for summary judgment. 569 F.Supp. 716. Reynolds also appeals from the denial of its motion for reconsideration.

Reynolds' action seeks recovery for the alleged unlawful termination by Mobil in September, 1979, of a 3.25 cents per gallon discount in the regular dealer tank wagon price of the gasoline it sold seven retail gas stations owned by Reynolds in the Boston area. The parties had been dealing with each other for years prior to the imposition of price controls on gasoline. The Reynolds stations in existence on May 15, 1973, the effective date of gasoline price controls, were receiving a 3.25 cent discount.

The issue presented is whether a triable issue exists as to plaintiff's claim that this discount represents a "customary price dif-

ferential." The burden is on the movant Mobil to show that such triable issue does not exist. *McWhirter Distributing Co. v. Texaco, Inc.,* 668 F.2d 511, 519 (Temp. Emer.Ct.App.1981); *Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1065 (Temp.Emer.Ct.App.1978). The court below held that the affidavits submitted by Reynolds contained only conclusory allegations, speculation and hearsay, which do not raise a genuine issue of a material fact. We affirm the order granting summary judgment to Mobil.

When price controls became effective on May 15, 1973, the oil industry was charging a wide range of prices for its products. Price levels generally could be determined by grouping the position of a purchaser according to its place in the line of distribution. However, there still existed differentials within these groupings.

The concept of "class of purchaser" was adopted to accommodate these differentials. The principal function of the "class of purchaser" was to preserve the price distinctions among purchasers that customarily existed under free market conditions. Consequently, the regulations adopted pursuant to the Emergency Petroleum Allocation Act, 15 U.S.C. § 751, *et seq.* (Supp. 1973), defined "class of purchaser" as:

> "[P]urchasers to whom a person has charged a comparable price for a comparable property or service pursuant to *customary price differentials* between those purchasers and other purchasers." 10 C.F.R. § 212.31 (emphasis added).

The same section provided that:

> "'Customary Price Differential' includes a price distinction based on a discount, allowance, add-on, premium, and an extra based on a difference in volume, grade, quality, or location or type of purchaser, or a term or condition of sale or delivery."

FEA Ruling 1975–2, 40 Fed.Reg. 10655 (March 7, 1975), was promulgated to provide guidance to sellers in creating classification of purchasers. It also specifically addressed a potential conflict between price controls and pricing procedures under the Robinson-Patman Act. *Id.* at 10656. The ruling provided that the "customary price differential" shall be determined, aside from grade or quality, by:

> "(1) Location [of the seller];
> (2) Type of purchaser;
> (3) Volume; and
> (4) Term or condition of sale or delivery. These factors, in the order listed above, provide a logical sequence for making class of purchaser determinations."

On the other hand, the ruling made clear that competitive price allowances should not impact upon the determination as to the "class of purchaser" to which an individual purchaser should be assigned.

Mobil set up one "class of purchaser" as all retail dealers who purchased from the East Boston Terminal of Mobil.

The contention of Reynolds is that the 3.25 cents a gallon discount was a "cost justified" amount based on volume, credit rating and ability to market Mobil's gasoline. This discount would constitute a "customary price differential," making Reynolds a separate "class of purchaser." In that event the termination of the discount would raise the price paid for the gasoline over the maximum allowable price resulting in a violation of the law.

The issue of law is clear. If the 3.25 cents per gallon discount was a competitive allowance, Mobil, under its agreement with Reynolds, was free to terminate the discount at any time. *Mr. Magic Car Wash, Inc. v. Department of Energy,* 596 F.2d 1023 (Temp.Emer.Ct.App.1978). However, if the discount was a cost-justified customary price differential, its withdrawal was forbidden by the price regulations. 10 C.F.R. §§ 212.31, 212.82, 212.83(a)(1); FEA Ruling 1975–2.

Mobil has submitted affidavits as to its practice in granting discounts. They flatly state that only competitive discounts were ever granted by Mobil, and that with the decision in *Mr. Magic Car Wash, Inc., supra,* it began to withdraw all competitive allowances that were no longer justified. Up to that time the industry was not sure

that withdrawal of such allowances was legal since its effect would be to raise the purchase price.

In opposing summary judgment Reynolds places great reliance on the decision by this court in *Wellven, Inc. v. Gulf Oil Corporation,* 731 F.2d 892 (1984). In that case, however, the facts showed that the supplier admitted that it classified its other discount recipients as single member classes of purchasers, except Wellven; that the contracts were consummated before the letters reporting the competitive offers were received; and that the classification of Wellven was unreasonable and set up solely for the purpose of illegally increasing the prices on the gasoline.

After four years of discovery, Reynolds has not produced any evidence to show that Mobil treated other retail purchasers differently from the way it treated Reynolds. It has found nothing in Mobil's files to show that the discounts were "cost justified." Reynolds admits that it received actual competitive offers before the contracts with Mobil were signed. The competitive letters are dated months in advance of the dates of the respective contracts. There is no flat statement that the competitive letters were shams. Incidentally, sellers may not talk to their competitors to verify competitive offers in order to establish a Robinson-Patman "meeting competition" defense. *Great Atlantic & Pacific Tea Co. v. Federal Trade Commission,* 440 U.S. 69, 80, 99 S.Ct. 925, 933, 59 L.Ed.2d 153 (1979); *United States v. Container Corporation of America,* 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969).

Reynolds also seeks to sustain its position by reference to statements of Mobil personnel that they wanted to keep Reynolds as a purchaser. These bare statements do not sustain an inference that the discounts were cost justified. The normal inference to be drawn from those statements is that Mobil did not wish to lose Reynolds to a competitor. Reynolds was an attractive customer for any seller and the competitive basis for such a discount was evident.

Reynolds' motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) was made for the purpose of furnishing material that would answer the court's observations regarding the deficiencies in Reynolds' opposition to the original motion. This material was available to Reynolds prior to the filing of its papers in opposition. The denial of the motion to reopen this case was not an abuse of discretion.

The judgment and order appealed from are affirmed.