**REYNOLDS INDUSTRIES, INC., Plaintiff,**

v.

**MOBIL OIL CORPORATION, Defendant.**

**Civ. A. No. 81–2095–C.**

United States District Court, D. Massachusetts.

Oct. 1, 1985.

Marc A. Reardon, Zachary R. Karol, Bingham, Dana & Gould, Boston, Mass., Collier, Shannon, Rill & Scott, Thomas J. Hamilton, Washington, D.C., for plaintiff.

R. Robert Popeo, Robert M. Gault, Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by the plaintiff Reynolds Industries, Inc. ("Reynolds") against the defendant Mobil Oil Corporation ("Mobil"). In Count I the plaintiff alleges that Mobil violated the Federal Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 *et seq.*, and Mandatory Petroleum Allocation Regulations (MPAR), 10 C.F.R. Parts 210 and 211 promulgated thereunder by refusing to supply Reynolds the correct quantity of gasoline in retaliation for Reynolds' institution of a lawsuit against Mobil. In Count II, the plaintiff alleges breach of the retail dealer contract between the parties. Jurisdiction in this action is based on 15 U.S.C. § 754(a)(1), which incorporates § 210 of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note. The case is now before the Court on cross motions for summary judgment.

During the period of time at issue, Reynolds operated a retail gasoline service station in Everett, Massachusetts ("Everett II"), as well as six other stations in Massachusetts. In February of 1978, Reynolds entered into five-year contracts with Mobil in which Reynolds agreed to purchase from Mobil gasoline for resale at Everett II and at its other stations. Under the terms of the Everett II contract, Reynolds had "a contract right to purchase an amount equal

to the maximum quantity provided for pursuant to mandatory allocation laws, rules and regulations." In addition, paragraph 8 of the contract's standard form language provided that "[a]ny claim of any kind by Buyer based on or arising out of this contract or otherwise, shall be barred, unless asserted by the commencement of an action within 12 months after the event, action or inaction to which such claim relates."

Reynolds began operating Everett II in August 1978. From August 1978 through February 1979, Mobil supplied gasoline to Everett II on the basis of an allocation entitlement calculated, as the regulations then required, with reference to the amount of gasoline purchased in 1972 by the station's previous operator. The Department of Energy (DOE) amended the regulations in May of 1979, changing the base period for calculating allocations to the period, November 1977 through October 1978. Everett II had been closed for 9 of those 12 months and therefore had nine zero purchase months in the updated base period. Subsequently, Mobil informed Reynolds that Everett II's new allocation was 88,711 gallons per month, and supplied gasoline to the Everett II station in accordance with this figure until October 1979. Meanwhile, in September 1979, Reynolds filed suit against Mobil alleging violations of the federal petroleum pricing regulations.[1] Early in October 1979, Reynolds received revised allocation figures for each of its stations supplied by Mobil. Believing the allocation for Everett II was erroneous, Reynolds notified Mobil that it took exception to this allocation.

On December 5, 1979, Mobil sent a letter to Reynolds explaining that the figures had been calculated according to the temporary exigent circumstances rule[2] for months which had zero purchases during the regulatory base period, and that the five-month averaging rule or unusual growth adjustment,[3] did not apply to those months. Previously, Mobil had applied both rules to the zero purchase months, a practice it discovered was incorrect. On the advice of its attorney, in July of 1980 Reynolds petitioned the DOE for assignment of a base period volume of 88,711 gallons per month for the zero purchase months. Mobil opposed the assignment in a letter to the DOE dated August 25, 1980. On January 22, 1981, the DOE granted Reynolds' assignment petition. Several days later, the gasoline allocation program was terminated. Reynolds filed this suit on August 14, 1981. The case was assigned to another judge of this Court, who recused himself in May, 1985, at which time it was then redrawn to the undersigned.

■ Before considering the merits of the allegations in this case, it is necessary to determine whether or not the plaintiff's claim is time-barred. Neither section 210 of the ESA nor the EPAA contains a limitation provision. In such a case, the general rule is that the most analogous state statute of limitations applies. *E.g., Gulf Oil Corp. v. Dyke*, 734 F.2d 797, 808 (Temp. Emer.Ct.App.), *cert. denied*, —— U.S. ——, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984). Massachusetts does not have a statute of limi-

---

**1.** *See Reynolds Industries, Inc. v. Mobil Oil Corp.*, 741 F.2d 1385 (Temp.Emer.Ct.App.1984). The Temporary Emergency Court of Appeals affirmed summary judgment granted by the United States District Court for the District of Massachusetts in favor of Mobil.

**2.** The "temporary exigent circumstances" rule (TEC) provided that for any base period month in which a customer had purchased at least 10% less gasoline than it had in the same month of the prior year due to a temporary exigency, the base period could be calculated based on the volume purchased the year before. *See* 10 C.F.R. § 211.105(e) (1979).

**3.** The "unusual growth adjustment" rule provided that if a customer purchased gasoline during at least three months of the October 1978 through February 1979 period, and the monthly average of those purchases from all suppliers in the months it purchased gasoline was at least ten percent greater than the aggregate amount of its actual motor gasoline purchases in a base period month from all suppliers, it could substitute as its base period use for the current month corresponding to that base period month its average monthly purchases in those months of the October 1978 through February 1979 period that it purchased motor gasoline. *See* 10 C.F.R. § 211.104 (1979).

tations specifically applicable to liabilities or private causes of action created by a federal statute. Reynolds relies heavily on *Hyland v. Dennison Manufacturing Co.,* 496 F.Supp. 939 (D.Mass.1980) to support its contention that the Massachusetts three-year tort statute of limitations applies to its claim. In *Hyland,* a suit for damages resulting from an alleged wrongful termination of employment in retaliation for the plaintiff's assertion of rights conferred by the ESA, the district court found the Massachusetts tort statute of limitations most analogous and appropriate. *Id.* at 940. In so doing, the court rejected the plaintiff's contention that the six-year statute of limitations for contract actions applied, stating that the provisions of the ESA relied upon by the plaintiff imposed duties of conduct based on social policies and not on any agreement of the parties. *Id.*

■ Although *Hyland* is instructive, it does not control in this case. The facts in this case differ from those in *Hyland* in at least one very significant respect: Reynolds and Mobil signed a contract containing an express limitations clause requiring Reynolds to commence action on any claim "based on or arising out of" the contract within 12 months of its accrual. Count II of the complaint, alleging breach of the contract between Reynolds and Mobil, is obviously based on the contract and thus subject to the limitations clause. Count I alleges that Mobil's failure to live up to its contractual obligation to supply the maximum quantity of gasoline allowed by the DOE regulations constituted retaliatory and discriminatory action, and circumvention of the regulations in violation of the MPRA. This claim directly relates to an express private agreement between the litigants. Without the contract, Reynolds would have no basis for its Count I claim. It is a consequence of the use of the mandatory petroleum allocation rules for the quantity term in the contract, and the resultant confusion in how to properly calculate the amount of gasoline due under the regulations, that gave rise to this action. The phrase "arise out of" should be given a

broader meaning than "based upon" where both appear in the same paragraph. *See Rosenberg v. Robbins,* 289 Mass. 402, 411, 194 N.E. 291 (1935). Although in Count I Reynolds asserts a claim created by federal legislation, the claim itself arises from a dispute concerning the proper interpretation of the quantity term in the retail dealer contract, and therefore arises out of the contract. I rule that as a consequence both counts are subject to the limitations provision.

It is generally accepted that contracting parties may provide a limitations period within which actions on the contract must be commenced, so long as the time period is not unreasonably abbreviated. *See generally, Order of United Commercial Travelers of America v. Wolfe,* 331 U.S. 586, 608, 67 S.Ct. 1355, 1365, 91 L.Ed. 1687 (1947); "Developments in the Law—Statutes of Limitations," 63 Harv.L.Rev. 1177, 1181 (1950). When two sophisticated parties freely enter into facially comprehensive written agreements, such documents cannot be "easily bypassed or given restrictive interpretations." *International Business Machines Corp. v. Catamore Enterprises Inc.,* 548 F.2d 1065, 1073 (1st Cir.1976). In *IBM,* the court found that a one-year limitations clause in a contract was valid under New York law and that the plaintiff was bound by his agreement to the provision. *Id.* at 1075–76. As the court in *IBM* noted, "when a supplier and its customer, neither of whom is helpless in the marketplace, agree on terms limiting the period of liability for future services to one year, those terms must be respected." *Id.* at 1076.

The reasoning in *IBM* is applicable to the facts in this case. Both Mobil and Reynolds are sophisticated business entities accustomed to making deals in a competitive marketplace. Reynolds has been in business for over forty years. It owns and operates at least six retail service stations in the Massachusetts area. David Reynolds, who was the principal negotiator for Reynolds in the contract discussions with Mobil, has been negotiating such contracts since 1965. The negotiations themselves

took place over a period of four to five months. Reynolds had previously held gasoline supply contracts with Mobil for two of its stations, and in 1978 Mobil actively solicited Reynolds for its business. This is not the case of a service station dealer who is a man of limited means overawed by a great corporation. *Shell Oil Company v. F.T.C.*, 360 F.2d 470, 487 (5th Cir.1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 541 (1967). Here, one successful corporation dealt with another. Where there is no evidence of coercion or undue pressure, and the retail dealer is not a novice in the business, and the dealer accepts the contract as proffered, it cannot claim lack of meaningful choice. *Malone v. Crown Central Petroleum Corp.*, 474 F.Supp. 306, 308 (D.Md.1979). Simply because the provision was part of what could be called the "boilerplate" section of the contract does not in itself make it unfair. As the Massachusetts Appeals Court noted in *Wang Laboratories, Inc. v. Docktor Pet Centers, Inc.*, 12 Mass.App. 213, 218, 422 N.E.2d 805 (1981), when discussing a standardized lease agreement form, the nature of the parties involved is entitled to weight. Therefore, I rule that the limitations provision in the contract between Reynolds and Mobil was not a contract of adhesion.

■ I also rule that the plaintiff's contention that the limitations provision is against public policy and should not be enforced is totally unpersuasive. Massachusetts law governs the substantive issues in this case. There is no evidence that a one-year limitations provision is contrary to Massachusetts public policy. In fact, the Uniform Commercial Code, as adopted in Massachusetts, expressly permits contracting parties to reduce the period of limitation for commencing action on a contract to one year. Mass.Gen.Laws c. 106, § 2–725. A contract between a supplier and distributor which includes a one-year limitation provision is not unreasonable or offensive to state law where the state Uniform Commercial Code permits such reduction. *Cape Fear Oil Co. of Wilmington, Inc. v. Mobil Oil Corp.*, 22 U.C.C.Rep. 369, 370 (E.D.N.C.1977). Moreover, chapter

93E of the General Laws of Massachusetts, which regulates agreements between suppliers and retail gasoline dealers, expressly includes a one-year limitation on causes of action brought under that chapter. Mass. Gen.Laws c. 93E, § 8. A one-year limitation is not unreasonable where the cause of action does not involve a violation which is difficult to discover, such as a hidden defect in a product. Reynolds could readily have ascertained each month how much gasoline was being supplied to Everett II.

With regard to the national policy underlying the ESA, absent statutory indication to the contrary, parties to a contract may stipulate to an abbreviated limitations period. *See, e.g., Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. at 608, 67 S.Ct. at 1365. The EPAA does not prohibit consensual contractual agreements including limitation provisions. *See* 15 U.S.C. § 751 *et seq.* The inclusion of a one-year limitation period in the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801 *et seq.*, indicates that Congress is not *per se* adverse to a one-year limitation period for actions between gasoline dealers and suppliers.

■ At least one court has upheld a one-year state statute of limitations applicable to a claim brought under the EPAA. *Ashland Oil Co. v. Union Oil Co.*, 567 F.2d 984, 990 (Temp.Emer.Ct.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978). The court in *Ashland* addressed the issue of which California statute of limitations applied to an action for overcharges on sales of petroleum products. *Id.* at 986. The court, noting the strong national policy expressed in the EPAA, found "no suggestion whatever in the statutory structure undergirding the claims before [the court] that Congress intended no limitation provisions to apply or that state statutes of limitations should not be looked to...." *Id.* at 989. Not presented with a contractual limitation provision, the court in *Ashland* applied the California one-year limitation period to actions brought pursuant to a statute for a penalty

424

or forfeiture and to the claim for treble damages under the EPAA. The court applied the three-year limitation to actions for liabilities created by statute which are not for penalty to the claim for actual damages. *Id.* at 987, 990–91. The court ruled that the one-year statute was inapplicable to a claim for actual damages where the complexity of the price regulations made it difficult to determine noncompliance, but did not find it *per se* contrary to the national policy underlying the EPAA. *Id.* at 991. Massachusetts, like California, has a one-year statute of limitations on actions for penalties or forfeiture under penal statutes, a limitation which would apply to Reynolds' claim for treble damages. Mass. Gen.Laws c. 260, § 5. I therefore rule that the one-year limitations provision in the contract between Reynolds and Mobil was, and is not, void as against either Massachusetts or federal policy.

■ A cause of action accrues when a defendant commits an act that injures the plaintiff. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). On December 5, 1979, Mobil sent a letter to Reynolds confirming the lower allocation entitlement which Reynolds claims was unlawfully imposed on it. Reynolds' cause of action therefore accrued on that date. As was established in *Siegel Oil Co. v. Gulf Oil Corp.,* 701 F.2d 149, 153 (Temp.Emer.Ct. App.1983), an alleged violation of the MPAR is not a continuing violation.

Reynolds also argues that Mobil should be equitably estopped from raising the one-year limitation provision. Under the doctrine of equitable estoppel, a defendant "is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made." *Precious Metals Associates, Inc. v. Commodity Futures Trading Comm'n,* 620 F.2d 900, 908 (1st Cir.1980), *quoting Bergeron v. Mansour,* 152 F.2d 27, 30 (1st Cir.1945). Reynolds contends that although it was informed by Mobil

that the December 5, 1979, letter expressed its interpretation of the correct method for calculating the amount of gasoline Everett II should receive, Reynolds did not view that letter as a violation of their contract because Mobil never specifically refused to supply the gasoline at the earlier, higher allocation level, and did not specifically state that the letter represented Mobil's final position concerning its obligations under the regulations. Reynolds also states, however, that it contacted its attorney in December, 1979, regarding the Everett II situation, and in response to Mobil's suggestion that it seek DOE advice. At that time, Reynolds certainly knew that it had instituted a lawsuit against Mobil, that Mobil had subsequently decreased its gasoline allocation, and that Mobil was not delivering the amount of gasoline to Everett II that Reynolds claimed was due. According to the record, Reynolds claims that Mobil, "after [the] December 5, 1979 letter ... simply made no further offers to supply gasoline to the Everett II location." Plaintiff's Response to Defendant's First Set of Interrogatories, #11. Mobil consistently delivered substantially less gasoline than the 88,711 gallons Reynolds claimed was due to it beginning in January 1980. From these facts it is impossible to find any evidence that Mobil's conduct caused Reynolds to refrain from commencing a suit against it.

Quite distinguishable are the facts in *Bergeron v. Mansour,* 152 F.2d at 27. In *Bergeron,* an insurance adjuster told the plaintiff there was no need to contact a lawyer, that the company would settle her claim for injuries following an automobile accident. *Id.* at 29. There is no evidence in this record that Mobil in any way lulled Reynolds into a false sense of security. In fact, Reynolds did contact a lawyer about the problem.

Even assuming that Reynolds reasonably relied on the representations made by Mobil, the representations' were only to the effect that Mobil would supply the amount of gasoline DOE stated was permissible when an interpretation was issued. Such

an order did not issue until January 1981, after the period during which Reynolds claims Mobil was in violation of its duties.

Finally, I note that Reynolds' claim that a dealer in its position would not bring suit against its supplier because of the unequal bargaining power between the parties so long as there was hope of resuming the supply is disingenuous. Reynolds was already in litigation with Mobil over a price discount, proving that Reynolds was not fearful of commencing a suit against Mobil under the contract. *See Reynolds Industries, Inc. v. Mobil Oil Corp.,* 741 F.2d 1385 (Temp.Emer.Ct.App.1984). Consequently, I rule that the defendant is not equitably estopped from asserting the one-year limitations provision in the contract, and that both counts in the complaint are time-barred.

Order accordingly.